GUIDRY, Judge.
Plaintiffs, the St. Landry Parish School Board (hereafter School Board) and the St. Landry Parish Police Jury (hereafter Police Jury), appeal a judgment of the trial court dismissing their suit against Martco Partnership for sales and use taxes allegedly due plaintiffs. We affirm.
FACTS
The facts essential to a disposition of the issues presented are not in dispute and were stipulated to at trial. In summary, the essential facts are as follows.
Effective February 1, 1966, the School Board adopted an ordinance levying a general sales and use tax of 1% upon certain transactions occurring within St. Landry parish.
*934 Pursuant to a duly called election, the Police Jury adopted an ordinance effective July 1, 1983, authorizing the collection of a sales and use tax of 80/ioo of 1%, with the proceeds of the tax being dedicated to the St. Landry Parish Solid Waste Disposal Commission.
The Police Jury appointed the School Board as its agent for collection of the solid waste tax on June 16, 1983.
In 1964, the Louisiana legislature enacted La.R.S. 33:130.11 et seq., the Louisiana Industrial Areas Act. Pursuant to the Louisiana Industrial Areas Act, on August 24, 1981, the Police Jury created an industrial area within the Parish of St. Landry which covered the land owned by Martco.
On May 9, 1983, Zack L. Woodard, managing partner of Martco, executed and forwarded to the Police Jury an affidavit stating, among other things, that Martco was privately furnishing garbage/refuse collection and disposal within the Industrial Area and that Martco would immediately notify the Police Jury in writing if it discontinued those services.
During the 1981 regular session, the Louisiana legislature enacted La.R.S. 51:1781 et seq., the Louisiana Enterprise Zone Act. Under the Enterprise Zone Act, the aforementioned Industrial Area in St. Landry Parish was also designated an Enterprise Zone.
Before commencing operations in July 1983, Martco applied to the State of Louisiana under the Enterprise Zone Act for exemption from sales and use, income, and corporate franchise taxes. On May 5, 1983 and July 6, 1983, the School Board and Police Jury respectively executed a Certificate of Local Government Endorsement endorsing Martco’s participation “... in the Louisiana Enterprise Zone Program and benefit from the exemptions as provided in R.S. 51:1781-1789”.
Pursuant to the provisions of the Louisiana Enterprise Zone Act, the State of Louisiana, represented by its Board of Commerce and Industry, and Martco entered into contract number 38020, effective June 16, 1983. Said contract provided, in part, for exemptions from sales and use taxes, and income and corporate franchise taxes for Martco’s operations within the Enterprise Zone.
Suit was originally filed against Roy 0. Martin Lumber Company, Inc. by the School Board for one lump sum of $60,-109.62, which included the sales and use taxes allegedly due the School Board and a portion of the solid waste tax claim. By several amending and supplementing petitions, Martco Partnership became the defendant and the School Board separated its own claim and that of the Police Jury (solid waste tax), which it asserted in its capacity as collection agent. The matter was 'submitted to the trial court on the basis of a stipulation of fact. The trial court found that Martco had valid exemptions from the taxes at issue and dismissed appellant’s claim with prejudice at appellant’s costs.
OPINION
The resolution of the issues on appeal involve the interpretation and application of two statutes: the Louisiana Industrial Areas Act, La.R.S. 33:130.11 et seq., and the Louisiana Enterprise Zone Act, La.R.S. 51:1781 et seq., plus a number of documents executed between the parties and/or one of the parties and the State.
Martco claims it has a valid exemption from the Police Jury tax (solid waste tax) under both laws and an exemption from the School Board sales and use tax under the Louisiana Enterprise Zone Act.
THE SOLID WASTE TAX
In 1964 the Louisiana Legislature in regular session enacted Act No. 406 creating the Louisiana Industrial Designated Area Act (R.S. 33:130.11 — 130.18). The Industrial Designated Area Act provided generally that industries within a specified area would furnish certain services usually provided by parish and local governments: the construction and cleaning of streets, street lighting, sewers and sewerage works, water service, fire protection, and garbage and refuse collection and disposal (R.S. 33:130.15). In return for providing these services, the companies in the Industrial *935 Area were granted certain benefits, including an exemption from any new tax levied to provide any of the services outlined in La.R.S. 33:130.15 (See La.R.S. 33:130.18).
On August 4, 1981, the Police Jury created an Industrial Area under the Industrial Area Act covering land owned by Roy 0. Martin Lumber Company and Martin Home Centers that eventually was utilized by Martco Partnership. Section 10 of the resolution creating that Industrial Area provides:
“That any industry located within the boundaries of this said Industrial Area as described in Exhibits ‘A’ and ‘B’ attached hereto shall be exempt from any new tax levied by a Special Service District for the purpose of providing garbage and refuse collection and disposal after any such industry located within the said Industrial Area has filed an affidavit with the Secretary of the Police Jury of the Parish of St. Landry stating that it is privately furnishing and maintaining within its own premises within the Industrial Area its individual garbage and refuse collection and disposal.” (Emphasis ours).
On April 30, 1983, a special election was held in St. Landry Parish to consider a proposed ordinance to provide for the levying, authorization and collection of an 8/ioths of 1% sales tax in order to provide waste disposal service for a previously established waste disposal district which included the Martco Industrial Area. The proposition passed and an ordinance was adopted by the Police Jury on June 7, 1983, authorizing the levy and collection of said tax effective July 1, 1983.
Meanwhile, on May 9, 1983, Zack Woodard, managing partner of Martco executed and forwarded to the Police Jury an affidavit stating that Martco was privately furnishing its own garbage and refuse collection and disposal and that Martco would immediately notify the Police Jury, in writing, if Martco discontinued such services. In brief, appellants admit that on July 12, 1983, Woodard sent another letter to the secretary of the Police Jury enclosing a copy of the affidavit of May 9, 1983, on the chance that the correspondence of May 9th had not been received.
It was also stipulated that Martco personally provided garbage and refuse collection and disposal from July 1, 1983 until February 29, 1988, with the exception of the period of May 1, 1984 to June 15, 1984, during which period they contracted with Waste Management of Acadiana for disposal of their waste. It was stipulated that the waste under the contract with Waste Management of Acadiana was being disposed of at the landfill site owned and operated by the St. Landry Parish Solid Waste Disposal District. When St. Landry Parish Solid Waste Disposal District made demand upon Martco for the payment of the tax because of the use of their facility and the failure of Martco to maintain garbage and refuse disposal service, Martco immediately cancelled its contract with Waste Management of Acadiana.
Appellants argue that, although under Section 10 of their resolution of August 1981 and La.R.S. 33:130.18 Martco would be exempt from any “new tax” once their affidavit was filed with the Police Jury that, in this case, since the election on the tax proposition was held on April 30, 1983 and certified on May 3, 1983, ten and six days respectively before Martco’s affidavit was executed and forwarded to the Police Jury, Martco is not exempt from the solid waste tax at issue. We disagree.
The Police Jury did not meet and adopt the ordinance authorizing levying and collecting the solid waste tax until June 7, 1983, almost a month after Martco submitted its affidavit. Further, the tax did not take effect until July 1, 1983, almost two months after Martco’s affidavit. Inasmuch as the tax was not in effect at the time Martco executed and submitted its affidavit, it was clearly exempt from this tax.
For a short period of time, May 1 to June 15, 1984, Martco contracted out the collection and disposal of garbage and refuse to Waste Management without notifying the Police Jury. The Police Jury argues that this was a violation of Martco’s Industrial Area agreement and thus made Martco liable for payment of the solid waste tax.
*936 La.R.S. 33:130.17 provides in pertinent part:
“The governing authority of a parish may abolish an industrial area or remove a portion of the territory from an industrial area only if the industry or industries located therein fail to furnish at the expense of said industry or industries any of the services listed in R.S. 33:130.15 for an extended period of time and only if there is a definite need for such services in the portion of the industrial area involved. The parish governing authority may abolish an industrial area or remove a portion of the territory from an industrial area only by resolution adopted after not less than one public hearing on the question....”
The trial judge determined that Martco was not guilty of failing to furnish services “for an extended period of time”. We agree. We also note approvingly the trial judge’s finding that the Police Jury failed to follow the procedure set out in § 130.17 for abolishing or removing a portion of territory from the industrial area.
Thus, the temporary contracting out of waste disposal services by Martco to Waste Management did not make Martco liable for payment of the solid waste tax.
Inasmuch as we have found Martco exempt from the solid waste tax under the Louisiana Industrial Areas Act, we will not address its exemption from liability for the solid waste tax under the Enterprise Zone Act.
THE SCHOOL BOARD SALES AND USE TAX
By contract number 38020, Martco entered into a “Contract For Exemption of Sales & Use Tax and Income and Corporate Franchise Taxes” with the State of Louisiana Office of Commerce and Industry. Said contract was executed pursuant to La.R.S. 51:1781 et seq. and contains, among others, the following provision:
“ARTICLE VI
From the effective date of this contract, which shall be June 16, 1983, and for the period of five (5) calendar years thereafter, the State of Louisiana does by these presents, give and grant unto Roy O. Martin Lumber Company, Inc., Martin Timber Company, Inc. and Martin Home Centers, Inc., partners who compromise Martco Partnership, exemption from state income tax based on income derived from this operation and exemption from corporate franchise tax to the extent of the investment of each partner in this operation. The State of Louisiana also grants an exemption from all state and political subdivision sales and use taxes, as allowed by law, on the purchases of on [sic] machinery and equipment used in said business as described elsewhere in this contract, whether purchased or imported by contractee or any other party.” (Emphasis ours)
La.R.S. 51:1787, which deals with the subject of incentives, states in part:
“A. The board, after consultation with the secretaries of the Department of Commerce and Department of Revenue and Taxation, and with the approval of the governor, may enter into contracts to provide:
(1) For the exemption from sales and use tax imposed by the state of Louisiana or from sales and use tax imposed by its political subdivisions upon approval of the governing authority of the appropriate municipality or the appropriate parish where applicable, or both, of the purchases of the material used in the construction of a building, or any addition or improvement thereon, for housing any legitimate business enterprise, and machinery and equipment used in that enterprise.
* * * * * *
B. The board may enter into the contracts provided in Subsection A of this Section provided that:
* * * * * *
(2) The request for such exemption is accompanied by an endorsement resolution approved by the governing body of the appropriate municipality, parish, port district, or industrial development board *937 in whose jurisdiction the establishment is to be located.” (Emphasis ours)
In Article 6 of the Louisiana Constitution of 1974, a political subdivision is defined as “a parish, municipality, and any other unit of local government, including a school board ...”.
Prior to the contract being signed, Mart-co sought the endorsement of the School Board. On May 5, 1983, the School Board, at its regular meeting, adopted a resolution “to grant a two year exemption authorized under R.S. 51:1781-1789 for a commitment from that company [Martco] to locate in St. Landry Parish, pending proper legal advice to make sure the granting of the said exemption is legal”, and on the same day, Vernon C. McManus, the president of the School Board, signed a Certificate of Local Government Endorsement on behalf of the School Board. Martco also sought and was granted a Certificate of Local Government Endorsement from the Police Jury. The Police Jury resolution granting Martco the certificate of endorsement also provided that if “... it [the endorsement] is illegal the approval will be withdrawn”.
It is well settled that an exemption from a tax is an exceptional privilege and, as such, must be clearly, unequivocally and affirmatively established. See Cotten v. Collector of Revenue, State of Louisiana, 579 So.2d 499 (La.App. 4th Cir.1991), and cases cited therein.
Appellant School Board argues that language in both the School Board and Police Jury resolutions which approved Martco’s endorsement was equivocal and thus the endorsement must fall. In his reasons for judgment, the trial judge stated: “It is true both bodies equivocated; but in the Court’s opinion, they made up their minds, and both approved the exemption. (Exhibits F and I)”.
We do not find the actions of either the School Board or the Police Jury to be equivocal. Rather, the resolutions simply state the obvious, i.e., if the resolutions are invalid, they would be null and would be disregarded. See U.S. v. Dickinson, 465 F.2d 496 (C.A.La.1972), on remand, 349 F.Supp. 227 (M.D.La.1972), affirmed, 476 F.2d 373 (5th Cir.), certiorari denied, 414 U.S. 979, 94 S.Ct. 270, 38 L.Ed.2d 223 (1973). The reference to legal advice and/or ruling does not make an action equivocal since this concern is implicit in all governmental action.
Alternatively, the School Board argues that it was without authority to grant any exemption to Martco under the Enterprise Zone Act. Under the provisions of the Enterprise Zone Act, the School Board’s only function was to indicate whether or not it approved of the State’s proposed exemption of the applicant (herein Martco) from the payment of sales and use taxes. The actual exemption did not come from the School Board, but from the State. Thus, this argument is without merit.
Accordingly, for the reasons stated, the judgment of the trial court is affirmed. All costs of this appeal are taxed against appellants, the St. Landry Parish School Board and the St. Landry Parish Police Jury to the extent permitted by law.
AFFIRMED.